UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

2386 HEMPSTEAD, INC.,

                Plaintiff,

        -v.-

WFG NATIONAL TITLE INSURANCE COMPANY,
CHARTER LAND SERVICES, and GENERAL
ABSTRACT SERVICES, LLC,

                Defendants.

22 Civ. 9944 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff 2386 Hempstead, Inc. ("Plaintiff") engaged in certain routine loan transactions with a nonparty to this case, in exchange for mortgages on that nonparty's property. When that nonparty defaulted on the loans and then filed for bankruptcy, the bankruptcy trustee learned that the nonparty's corporate form had in fact been dissolved prior to the execution of the loans. As such, the trustee commenced an adversary proceeding to find that the loans were unsecured, which resulted in Plaintiff netting substantially less in proceeds from the property's sale than it claims it was otherwise due. Plaintiff commenced the instant action in state court against Defendant WFG National Title Insurance Company ("Defendant") for declaratory relief and for breach of contract, on the theory that Defendant is liable under a title insurance policy due to defective title. Following Defendant's removal of the case to this Court, Plaintiff filed an amended complaint asserting claims against title agents Charter Land Services and General Abstract Services, LLC (collectively, the "Title Agents"), and now seeks remand to state court on the basis of lack of

complete diversity.  For the reasons that follow, the Court grants Plaintiff's

motion for remand.

## BACKGROUND[1]

Plaintiff commenced this action by filing a complaint in the New York

State Supreme Court, New York County, on October 23, 2022.  (Dkt. #1

("Notice of Removal"), Ex. A).  On November 22, 2022, Defendant removed the

case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.  (*See generally*

Notice of Removal).  In particular, Defendant invoked this Court's diversity

jurisdiction by noting that the amount in controversy exceeds $75,000 and

that the parties are completely diverse.  (*Id.* ¶¶ 5-8).  Defendant filed both an

answer and a counterclaim to the original complaint on November 29, 2022.

(Dkt. #4-5).  Thereafter, Plaintiff filed the AC as of right on December 1, 2021.

(AC).  The AC is nearly identical to the prior complaint, but adds claims against

the Title Agents, who are citizens of New York and thus non-diverse to Plaintiff.

(*Id.* ¶¶ 1-3).

---

[1]     The Court sources the facts for this Opinion from the Amended Complaint (Dkt. #6
("AC")), as well as certain exhibits attached to the parties' affidavits submitted in
connection with Plaintiff's motion.  These include the Affidavit of Michael R. O'Donnell
(Dkt. #10-1 ("O'Donnell Aff.")) and the Reply Affidavit of Jonathan Leitman (Dkt. #11-1
("Leitman Reply Aff.")).  In particular, the Court relies on the title insurance policy,
submitted in connection with the Affidavit of Michael R. O'Donnell (O'Donnell Aff., Ex. B
("Policy")).  The Court cites to other affidavits and exhibits using the convention "[Name]
Aff., Ex. []."

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its
motion for remand as "Pl. Br." (Dkt. #8-1); to Defendant's memorandum of law in
opposition to Plaintiff's motion for remand as "Def. Opp." (Dkt. #10); and to Plaintiff's
reply memorandum of law as "Pl. Reply" (Dkt. #11).

The AC is the operative pleading for the instant motion and supplies the relevant factual allegations.[2]  Specifically, the AC alleges that Plaintiff loaned non-party 60 91st Street Corp. ("Debtor") $1.4 million on August 13, 2015, in exchange for a mortgage on real property held by Debtor.  (AC ¶¶ 4, 7).  Just over one year later, on October 3, 2016, Plaintiff loaned an additional $300,000 to Debtor, likewise secured by a mortgage on the subject property.  (*Id.* ¶ 9).  Plaintiff and Debtor then entered into a consolidated loan agreement, which was also secured by a mortgage on the relevant property.  (*Id.* ¶¶ 10-11).  Defendant issued a title insurance policy (the "Policy") to Plaintiff in connection with the execution of the consolidated loan.  (*Id.* ¶ 12).  The Title Agents conducted a title search in connection with the Policy.  (*Id.* ¶ 13).

On November 16, 2017, Debtor defaulted on its payments under the consolidated loan, and Plaintiff filed a foreclosure action.  (AC ¶ 14).  The New York Supreme Court entered an order for a judgment of foreclosure on December 9, 2019.  (*Id.* ¶ 15).  However, on February 4, 2020, Debtor filed a petition for bankruptcy.  (*Id.* ¶ 16).  On April 20, 2020, the bankruptcy court appointed a trustee, who in turn discovered that Debtor's corporate form had been dissolved in 2009.  (*Id.* ¶¶ 19, 21).  Upon learning of this fact, the trustee

---

[2]     The Court has omitted discussion of various facts put forth by Defendant in its answer and opposition papers, finding such facts to be irrelevant to the instant motion.  In particular, the Court does not discuss various facts posited by Defendant suggesting that Plaintiff breached the terms of the Policy, as well as Defendant's recounting of the bankruptcy proceedings.  (*See* Def. Opp. 4-9, 13-14).  Defendant does not principally argue the relevance of these facts in its opposition, and the Court does not see how they bear on its analysis, other than to raise factual disputes not ripe for this Court's resolution.

initiated an adversary proceeding to find that the loans Plaintiff issued to Debtor were unsecured because they had been executed at a time when Debtor's corporate form was defunct. (*Id.* ¶¶ 22-23). Plaintiff claims that the Title Agents were advised of the trustee's claim of a defect in title prior to the initiation of the adversary proceeding, and that they had advised Plaintiff that they would notify Defendant of the same. (*Id.* ¶ 23).

Eventually, the trustee secured a bid to purchase the subject property for $3.1 million, of which the trustee determined that Plaintiff was entitled to $1.8 million as an unsecured creditor. (AC ¶ 24). Plaintiff claims that Defendant, despite being advised of the trustee's claim of defective title, was slow in responding to Plaintiff's notice of the defect, which resulted in Plaintiff settling its claim with the bankruptcy court for $2.1 million. (*Id.* ¶¶ 25-27). Accordingly, Plaintiff brings two claims. The first claim, for declaratory judgment, seeks a declaration that Defendant is liable for damages as a result of the defect in title, including the difference between the amount Plaintiff received from the bankruptcy court and the amount Plaintiff would have received had the mortgages been valid. (*Id.* ¶¶ 28-30). The second claim, for breach of contract, alleges that Defendant is liable for the defect in title. (*Id.* ¶ 32). As to the Title Agents, the AC pleads that "[t]he Title Agent[s] had a contractual duty to the Plaintiff to conduct an adequate search for defects in title, and failed to conduct same, in that the Title Agent[s] failed to find the Debtor's dissolution, which would have been found if the search had been

properly conducted." (*Id.* ¶ 34; *see also id.* ¶ 35 ("[T]he Title Agent[s] failed to timely notify [Defendant] of the defect in title[.]")).

After filing the AC, Plaintiff filed a motion to remand this case to state court on December 5, 2022. (Dkt. #8). In particular, Plaintiff moves for an order pursuant to 28 U.S.C. § 1447(e) remanding the case to the New York Supreme Court, because the Title Agents are non-diverse. (*Id.*; *see also* AC ¶¶ 1-3 (pleading that Plaintiff and the Title Agents are citizens of New York)).[3] On December 15, 2022, Defendant filed an answer to the AC with a counterclaim against Plaintiff (Dkt. #9), and filed its opposition to the motion to remand and supporting papers on December 19, 2022 (Dkt. #10). On January 3, 2023, Plaintiff filed a reply in support of its motion. (Dkt. #11).

## DISCUSSION

### A.    The Relevant Statute Is 28 U.S.C. § 1447(e)

As is evident from the procedural background of this case, Plaintiff filed the AC following Defendant's removal of the case to this Court. The parties do not dispute that removal was proper in the first instance, and that this Court has subject matter jurisdiction over this case absent the AC and the concomitant joinder of the Title Agents. (*See* Pl. Br. 4 ("If the Court *permits* joinder of a non-diverse party, remand to state court is required, pursuant to 28. U.S.C. § 1447(e)" (emphasis added)); Def. Opp. 3 (discussing Defendant's removal to this Court pursuant to 28 U.S.C. §§ 1332 and 1441)). The parties

---

[3]     The Title Agents have not been served to the Court's knowledge, and have not appeared in this case.

5

disagree, however, over the propriety of the joinder of the non-diverse parties to this action and the resulting remand.  Plaintiff contends that the Court should permit joinder because it has learned that the Title Agents are at least partially to blame for Defendant's alleged delay in responding to the defect in title.  (Pl. Br. 4).  Defendant, on the other hand, contends that Plaintiff's joinder of the Title Agents is "fraudulent" because (i) Plaintiff waited to add the Title Agents to this action until after removal; (ii) the claims against the Title Agents are frivolous; and (iii) there is no possibility that Plaintiff can state a contract claim against the Title Agents.  (Def. Opp. 12-15).

While the parties devote much energy to discussing the fraudulent joinder doctrine — including extensive disagreement about how leading cases in this area, such as *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998), and its progeny apply — the doctrine is not dispositive here, but rather is relevant to only one part of the Court's analysis.[4]  This is so because the case was properly removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.  (*See* Notice of Removal ¶¶ 4-9).  When the case was removed, complete

---

[4]    The Court pauses to note that courts do look to the fraudulent joinder analysis when analyzing the fourth prong of the fundamental fairness test discussed later in this Opinion.  Thus, the Court does not mean to contradict itself when it discusses "fraudulent joinder" in that part of its analysis, as courts consider the doctrine in determining a plaintiff's motive for joinder.  *See, e.g.*, *Hosein* v. *CDL W. 45th St., LLC*, No. 12 Civ. 6903 (LGS), 2013 WL 4780051, at *6 (S.D.N.Y. June 12, 2013) ("While the doctrine of fraudulent joinder is not applicable post-removal as discussed above, its underlying analysis — which looks to the relationship of the non-diverse defendants to the controversy — is highly germane, both as to [p]laintiffs' motive and as an independent consideration under § 1447(e)."); *see also Schur* v. *L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) ("[A]lthough the fraudulent joinder doctrine is not directly applicable to the post-removal context, it can be a relevant factor for determining whether to permit joinder under § 1447(e).").

diversity of citizenship existed between Plaintiff, a New York corporation, and Defendant, a South Carolina corporation, and the amount in controversy requirement was met, as Plaintiff seeks more than $1 million in damages.  (*Id.*). Plaintiff's motion for remand premised on the addition of the non-diverse Title Agents followed Plaintiff's decision to file the AC in this Court on December 1, 2022.  (Dkt. #6, 8).

It is true that if the AC were to stand as the operative pleading in this case, the Court would have to remand the action to state court due to a lack of subject matter jurisdiction.  *See, e.g.*, *Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." (internal quotation marks and citation omitted)).  But given this case's posture and the fact that removal was proper, the Court must analyze Plaintiff's motion under 28 U.S.C. § 1447(e), which governs proceedings following removal of cases from state court.  *See Hosein* v. *CDL W. 45th St., LLC*, No. 12 Civ. 6903 (LGS), 2013 WL 4780051, at *3 (S.D.N.Y. June 12, 2013) ("The doctrine of fraudulent joinder … is legally inapplicable when, as here, a nondiverse party is added after removal." (citing *Cobb* v. *Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999) ("The fraudulent joinder doctrine does not apply to joinders that occur after an action is removed."))); *see also Begani* v. *960 Assocs. LLC*, No. 18 Civ. 12000 (ALC) (SLC), 2021 WL 5362173, at *6 (S.D.N.Y. May 10, 2021) (noting that "28 U.S.C. § 1447(e), and not the doctrine of fraudulent joinder, provides the proper basis to analyze whether to allow joinder of diversity-

destroying, nondiverse parties" (internal quotation marks and citation

omitted)), *report and recommendation adopted sub nom. Bengani* v. *960 Assocs.*

*LLC*, No. 18 Civ. 12000 (ALC) (SLC), 2021 WL 4892865 (S.D.N.Y. Oct. 20,

2021).  Thus, despite the parties principally arguing the matter under the

fraudulent joinder doctrine, the Court considers Plaintiff's motion for remand

and Defendant's opposition thereto in light of this Court's discretion to permit

joinder and remand under Section 1447(e).

## B.   The Court Permits Joinder and Grants Plaintiff's Motion for Remand

### 1.   Applicable Law

Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join

additional defendants whose joinder would destroy subject matter jurisdiction,

the court may deny joinder, or permit joinder and remand the action to the

State court."  28 U.S.C. § 1447(e).  The decision to permit the joinder of

additional parties is "within the sound discretion" of the court.  *Briarpatch Ltd.,*

*L.P.* v. *Pate*, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000).  "[T]he majority of federal

courts, including those in this District, that have addressed this issue have

concluded that Section 1447(e) governs post-removal joinder of non-diverse

defendants even when a complaint is amended as of right under Rule 15."

*Isaly* v. *Bos. Globe Media Partners, LLC*, No. 22 Civ. 2254 (LTS), 2023 WL

144854, at *3 (S.D.N.Y. Jan. 10, 2023) (collecting cases); *see also Leifer* v.

*JPMorgan Chase Bank, N.A.*, No. 18 Civ. 7477 (PGG), 2020 WL 1130727, at *2

(S.D.N.Y. Mar. 9, 2020) ("[A] plaintiff must seek permission from the [c]ourt

prior to joinder of a defendant who destroys diversity jurisdiction, even where the complaint could otherwise be amended as of right.").

"In deciding whether to permit such joinder, courts in this District engage in a two-part analysis." *Linzy* v. *Uber Techs., Inc.*, No. 21 Civ. 5097 (ER) (SDA), 2022 WL 1556972, at *2 (S.D.N.Y. Apr. 14, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, No. 21 Civ. 5097 (ER) (SDA), 2022 WL 1558312 (S.D.N.Y. May 17, 2022). "[C]ourts first consider whether joinder would be appropriate under [the Federal Rules] and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Corona Grp., LLC* v. *Park*, No. 21 Civ. 2889 (GHW), 2022 WL 16838191, at *2 (S.D.N.Y. Nov. 9, 2022) (quoting *Briarpatch*, 81 F. Supp. 2d at 515).

As to the first prong of this analysis, "joinder and remand must satisfy Federal Rule of Civil Procedure 20, which governs permissive joinder of parties." *McGrath* v. *Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *5 (S.D.N.Y. Feb. 26, 2021) (citing *Nazario* v. *Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003)). Rule 20(a)(2) provides that multiple defendants may be joined in a single action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and … any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). When assessing if Rule 20(a)(2)'s requirements have been met, courts must accept the factual allegations in a

plaintiff's complaint as true.  *McGrath*, 2021 WL 791537, at *5 (citing *Viada* v. *Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006)).

If the party seeking joinder has met the requirements of Rule 20(a), the Court next determines "whether the balance of considerations on the second step weighs in favor of joinder."  *Rivera* v. *Robin*, No. 19 Civ. 9558 (JPO), 2020 WL 1644014, at *1 (S.D.N.Y. Apr. 2, 2020).  "To make such a fairness determination, courts consider the following factors: [i] any delay and the reason for delay, [ii] prejudice to the defendant, [iii] the likelihood of multiple litigation, and [iv] the plaintiff's motivation in seeking joinder."  *Isaly*, 2023 WL 144854, at *4 (citing *Duino* v. *CEM W. Vill., Inc.*, No. 18 Civ. 10249 (CM), 2020 WL 3249214, at *3 (S.D.N.Y. June 16, 2020)).

### 2.    Joinder Is Permissible Under Rule 20(a)(2)

As alluded to earlier in this Opinion, the parties have not precisely adhered to the guiding two-prong analysis for assessing whether the Court should permit a joinder that destroys diversity.  As a result, this Court begins by considering whether joinder is permissible under Rule 20(a)(2).  On this Court's review of the AC, it is clear that Plaintiff's claims against the Title Agents and Defendant arise at least in part under the same Policy and also flow from the same factual premises (*e.g.*, an alleged defective title search and delay associated with responding to Plaintiff's policy claim).  Thus, resolution of Plaintiff's claims will include "many of the same questions of law and fact" as to all Defendants.  *Duino*, 2020 WL 3249214, at *2 (finding Rule 20(a) satisfied because the "right to relief asserted against both … the landlord of the

10

apartment[] and … the leaseholder of the apartment[] arise from the same alleged fall"); *M.S.S. Const. Corp.* v. *Century Sur. Co.*, No. 15 Civ. 2801 (ER), 2015 WL 6516861, at *6 (S.D.N.Y. Oct. 28, 2015) (finding joinder permissible because "[p]laintiff's right to relief against all three [d]efendants arises from the same series of transactions or occurrences — the procurement and issuance of [p]laintiff's general commercial liability insurance policy — and likely will result in common questions of law and fact arising between [d]efendants").  Because the Federal Rules of Civil Procedure encourage "entertaining the broadest possible scope of [an] action consistent with fairness to the parties[,] joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 724 (1966).  Thus, the Court finds joinder permissible under Rule 20(a)(2).

### 3.    Joinder Is Fundamentally Fair

Whether joinder is permissible is not the end of the inquiry, however. Rather, the Court is called upon to consider the fundamental fairness of joinder and remand, which, in turn, requires the Court to weigh four factors. Plaintiff's motivation for joinder is principally in dispute here; with respect to this factor, "it is important to keep in mind that '[u]nless a plaintiff seeks to add a non-diverse party *solely* to destroy the court's basis for diversity jurisdiction, the court is required [if the other factors are met] to remand the action to state court.'"  *Balfour* v. *Quest Diagnostics Inc.*, No. 11 Civ. 4701 (JSR), 2012 WL 335666, at *2 (S.D.N.Y. Feb. 1, 2012) (quoting *Shorl* v. *Bulk-*

*Matic Transp. Co.*, No. 93 Civ. 6040 (CSH), 1994 WL 363941, at *2 (S.D.N.Y. July 13, 1994)) (emphasis in *Balfour*).

> **a.    Lack of Delay, Lack of Prejudice, and the Likelihood of Multiple Litigation Weigh in Favor of Joinder and Remand**

As previously discussed, neither party has made an argument under the relevant standards for granting a joinder and then remanding under Section 1447(e), focusing instead on the propriety *vel non* of the claims against the Title Agents.  (*See* Pl. Br. 4; Def. Opp. 12-19; Pl. Reply 2-5).  The Court thus proceeds to the fairness analysis without the benefit of the parties' insight.

Beginning with the issue of delay, the Court observes that Plaintiff promptly joined the Title Agents following removal of this case to this Court.  "Delay in seeking amendment is measured from the date of removal."  *Cooper* v. *Trustees of Coll. of Holy Cross*, No. 13 Civ. 8064 (KPF), 2014 WL 2738545, at *8 (S.D.N.Y. June 17, 2014) (quoting *Nazario*, 295 F. Supp. 2d at 363).  Here, Plaintiff filed the AC just nine days after the case was removed (Dkt. #6), and filed its motion for remand just four days after filing the AC (Dkt. #8).  This is well within the timeframe that courts routinely find reasonable for joinder, and the Court finds no meaningful delay here.  *See, e.g.*, *M.S.S. Const. Corp.*, 2015 WL 6516861, at *7 (finding three-month delay for joinder after time of removal not unreasonable, particularly given that amended complaint was filed within court-ordered deadlines); *Hosein*, 2013 WL 4780051, at *5 (same, with respect to six-month delay); *Vanderzalm* v. *Sechrist Indus., Inc.*, 875 F. Supp. 2d 179, 184 (E.D.N.Y. 2012) ("[T]he six day delay in adding ... a defendant and

subsequent four day delay in moving to remand does not constitute a significant delay following removal.").

Likewise, the Court finds no meaningful prejudice to Defendant.  Reading Defendant's opposition submission liberally, the Court understands Defendant's claim of prejudice to be the loss of its ability to litigate in this forum.  But the loss of litigating in federal court does not constitute sufficient prejudice to deny joinder.  *See, e.g.*, *Cooper*, 2014 WL 2738545, at *8 ("It is true that [d]efendants have an interest in defending this action in this forum, and that they properly removed this action, but these facts alone do not suffice."); *Nazario*, 295 F. Supp. 2d at 364 (same, and further noting that the case had not "advanced in any way to a point where remanding it to state court with additional defendants will require [the defendant] to revise or abandon a litigation strategy for which resources have already been expended").  Because this case remains in its infancy and no motion practice (beyond the instant motion) or discovery has commenced, the lack of prejudice to Defendant counsels in favor of allowing joinder and remanding.  *See, e.g.*, *Jerido* v. *Uber Techs., Inc.*, No. 22 Civ. 2217 (KPF), 2022 WL 17986179, at *5 (S.D.N.Y. Dec. 29, 2022) (collecting cases).

Conversely, if the Court denies joinder here, there could be two separate and parallel litigations — "one in state court and one in federal court."  *Hosein*, 2013 WL 4780051, at *6.  Thus, to the extent Plaintiff can state possible claims against the Title Agents, failure to permit joinder here would result in a separate state court action.

13

### b.    Defendant Has Not Proven Fraudulent Joinder

"A plaintiff's motivation for seeking joinder and remand 'is the most significant consideration in the fairness analysis.'" *Isaly*, 2023 WL 144854, at *5 (quoting *Hudson EFT, LLC* v. *Westchester Surplus Lines Ins. Co.*, No. 20 Civ. 8603 (PAE), 2020 WL 6712203, at *3 (S.D.N.Y. Nov. 16, 2020)). "Generally speaking, 'unless a plaintiff seeks to add a non-diverse party *solely* to destroy the court's basis for diversity jurisdiction, the court is required [if the other factors are met] to remand the action to state court.'" *Jerido*, 2022 WL 17986179, at *6 (quoting *McGrath*, 2021 WL 791537, at *7). "Of course, the court cannot countenance fraudulent joinder, and 'a non-diverse defendant will be disregarded in ascertaining the existence of diversity on a remand motion if that defendant has no real connection to the case and is named merely to defeat diversity jurisdiction.'" *Smith* v. *Nkomarume*, No. 17 Civ. 6369 (DF), 2018 WL 4660362, at *6 (S.D.N.Y. Sept. 5, 2018) (quoting *M.S.S. Const. Corp.*, 2015 WL 6516861, at *8 (internal quotation marks and citation omitted)). Thus, "[i]n determining a plaintiff's motivation, courts typically look to the timing of the joinder, the circumstances of the case, and whether there is a cause of action against the non-diverse defendant." *Ruiz* v. *Forest City Enterprises, Inc.*, No. 09 Civ. 4699 (RJD) (MDG), 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010).

With respect to the fraudulent joinder inquiry, "the defendant must demonstrate, by clear and convincing evidence … that there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against

the non-diverse defendant in state court." *Briarpatch*, 81 F. Supp. 2d at 516 (quoting *Pampillonia*, 138 F.3d at 461). "[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d 272, 280 (S.D.N.Y. 2001) (noting that in fraudulent joinder cases, "the [c]ourt must consider the state law upon which the claim rests"). "All uncertainties in applicable state law are resolved in favor of the plaintiff, and the complaint is subjected to 'less searching scrutiny than on a motion to dismiss for failure to state a claim.'" *Campisi* v. *Swissport Cargo Servs., LP*, No. 09 Civ. 1507 (FB) (JMA), 2010 WL 375878, at *2 (E.D.N.Y. Jan. 26, 2010) (quoting *Intershoe, Inc.* v. *Filantro SPA*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000)).[5]

The entirety of Defendant's opposition hinges on Plaintiff's motivation, and Defendant offers two reasons why joinder and remand should be denied on this basis. *First*, Defendant contends that Plaintiff clearly knew of its claims against the Title Agents when it filed this case, indicating that "Plaintiff consciously chose to withhold those claims and only asserted them after removal to this Court." (Def. Opp. 13). This is so because Plaintiff pleads that the Title Agents were "advised of the Trustee's claim of defect of title, and

---

[5]    The parties do not dispute that the relevant state law is New York law. *See Krumme* v. *WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent ... is sufficient to establish choice of law." (internal quotation marks and citation omitted)).

advised the Plaintiff and/or [its] agent that they would advise [Defendant] of the defect in title" around September 2020, a full two years before this litigation was filed. (AC ¶ 23; Def. Opp. 12-13). *Second*, Defendant contends that Plaintiff cannot possibly plead a cause of action against the Title Agents, because title searching is done for the benefit of the insurer, not the insured, and because there is no claim for notice under the Policy given to the Title Agents. (Def. Opp. 15-18).[6]

The Court agrees that the timing of Plaintiff's joinder of the Title Agents is suspect. Plaintiff filed the AC just days after Defendant's removal of the case to this Court. And though Plaintiff claims in its opening brief that it had only recently learned of the factual bases giving rise to its allegations against the Title Agents (Pl. Br. 2-4), this assertion is plainly belied by the record. For example, Plaintiff pleads that the Title Agents and Plaintiff communicated regarding a possible defect in title in September 2020, more than two years before this case was filed in state court. (AC ¶ 23). Plaintiff's counsel's reply affidavit only underscores Plaintiff's likely knowledge of any possible claims against the Title Agents before the filing of the AC, as it confirms email correspondence between Plaintiff and at least one of the Title Agents in

---

[6]    "In the specific context of fraudulent joinder, documents outside of pleadings can be considered 'to determine if the pleadings can state a cause of action.'" *Castillo* v. *BJ's Wholesale Club*, No. 22 Civ. 1621 (KAM) (RLM), 2022 WL 17284794, at *3 (E.D.N.Y. Nov. 29, 2022) (quoting *MBIA Ins. Corp.* v. *Royal Bank of Canada*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009)); *see also McGrath* v. *Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, at *1 n.2 (S.D.N.Y. Feb. 26, 2021) (considering evidence outside the pleadings on motion for remand pursuant to 28 U.S.C. § 1447(e)). As such, the Court has reviewed and relies on the Policy, submitted in connection with Defendant's opposition.

September 2020 related to filing a claim under the Policy.  (Leitman Reply Aff.,

Ex. A).  Thus, the Court does not credit Plaintiff's assertion that it discovered

new information in the intervening period between the filing of the original

complaint and the AC in this case.  *Cf. Roll On Express, Inc.* v. *Travelers Indem.*

*Co. of Conn.*, No. 09 Civ. 213 (RLM), 2009 WL 1940731, at *6 (E.D.N.Y. July 2,

2009) ("More specifically, joinder may be allowed where, as here, a plaintiff

discovers new information, subsequent to filing its complaint, that warrants

the addition of new parties." (collecting cases)).

Turning to the fraudulent joinder inquiry, the Court must determine

whether Defendant has proven that there is no "possibility that the state court

would allow" Plaintiff's claims to proceed against the Title Agents.  *Segal* v.

*Firtash*, No. 13 Civ. 7818 (RJS), 2014 WL 4470426, at *3 (S.D.N.Y. Sept. 9,

2014).  This inquiry must be assessed not under the more demanding motion

to dismiss standard, but instead by asking "whether recovery is *per se*

precluded[.]"  *Nemazee* v. *Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y.

2002).  By the AC's explicit terms, Plaintiff's claims against the Title Agents

appear to sound in contract.  (*See* AC ¶ 34 (alleging, under second cause of

action for breach of contract, that the Title Agents "had a contractual duty to

the Plaintiff to conduct an adequate search for defects in title")).  Yet in

Plaintiff's reply, Plaintiff appears to suggest that its claims against the Title

Agents also include a claim for negligence.  (Pl. Reply 2-3 (noting that Plaintiff's

claims against the Title Agents are for a negligent title search and for failing to

notify Defendant of the defective title)).  The AC is not an artful pleading by any

means.  But it is the Court's obligation to construe it to give effect to whatever possible claims it might state, not to elevate form over substance.[7]

To determine whether there is any possibility that Plaintiff's claims against the Title Agents would proceed in state court, the Court begins with the law.  A title insurance policy "is a contract by which the title insurer agrees to indemnify its insured for loss occasioned by a defect in title." *Appleby* v. *Chi. Title Ins. Co.*, 914 N.Y.S.2d 257, 260 (2d Dep't 2011) (quoting *L. Smirlock Realty Corp.* v. *Title Guar. Co.*, 52 N.Y.2d 179, 188 (1981)).  Like any other contract, "insurance contracts must be construed to give effect to the intent of the parties, as expressed in the plain meaning of the contract language." *Sarinsky's Garage, Inc.* v. *Erie Ins. Co.*, 691 F. Supp. 2d 483, 485 (S.D.N.Y. 2010); *see also Olin Corp.* v. *Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012) ("Under New York law, insurance policies are interpreted according to general rules of contract interpretation.").  "Since the title insurer's liability to its insured is based, in essence, on contract law, that liability is governed and limited by the agreements, terms, conditions, and provisions contained in the title insurance policy[.]" *Nastasi* v. *Cnty. of Suffolk*, 966 N.Y.S.2d 172, 174 (2d Dep't 2013).

---

[7]     Indeed, "[i]t is well settled that labels placed on allegations are not controlling.  It matters not what name a plaintiff gives to its cause of action: the substance of the factual allegations overrides the form." *Westport Ins. Corp.* v. *Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (citing *Cole* v. *O'Tooles of Utica, Inc.*, 643 N.Y.S.2d 283, 285 (4th Dep't 1996); *Guidetti* v. *Pratt Plumbing & Heating*, 389 N.Y.S.2d 170, 170 (3d Dep't 1976)).

It is "well settled law that a cause of action for negligence in searching title does not lie in an action on the policy." *Citibank, N.A.* v. *Chi. Title Ins. Co.*, 632 N.Y.S.2d 779, 781 (1st Dep't 1995) (collecting cases); *id.* at 783 (noting that the title search "was made for [the insurer's] benefit ... not for the benefit of [the insured]"); *see also Ilkowitz* v. *Durand*, No. 17 Civ. 773 (PGG), 2018 WL 1595987, at *15 (S.D.N.Y. Mar. 27, 2018) ("[A] title insurance policy is separate and distinct from a contract for a title search, and a cause of action for a negligent title search may not be asserted under a title insurance policy." (internal quotation marks and citation omitted)).  This is so because "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated[.]"  *Clark-Fitzpatrick, Inc.* v. *Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987); *accord Union St. Tower LLC* v. *First Am. Title Co.*, 986 N.Y.S.2d 869 (Table), 2014 WL 763233, at *8 (N.Y. Sup. Ct. 2014).  Moreover, absent a provision to the contrary, the nature of a contract for title insurance leaves no room for basing liability on the standard of care applied by the insurer in performing a title search.  *See Citibank*, 632 N.Y.S.2d at 781 ("The doctrine of skill or negligence has no application to a contract of title insurance." (internal quotation marks and citation omitted)); *accord Maggio* v. *Abstract Title & Mortg. Corp.*, 98 N.Y.S.2d 1011, 1013 (4th Dep't 1950).

While a cause of action for negligence based on a deficient title search cannot be sustained under a title insurance policy, such a claim may arise under a certificate of title.  *See Citibank*, 632 N.Y.S.2d at 782 ("The contract for

a title search is separate and distinct from the contract of insurance; liability for a negligent search arises from the former." (internal quotation marks and citation omitted)); *accord Ilkowitz*, 2018 WL 1595987, at *15.  That said, where "the certificate of title has merged in the subsequently issued title [insurance] policy, any action for damages arising out of the search — whether sounding in tort or contract — is foreclosed."  *Citibank*, 632 N.Y.S.2d at 782 (citation omitted); *accord Valcon Am. Corp.* v. *CTI Abstract of Westchester*, 958 N.Y.S.2d 64 (Table), 2010 WL 3385590, at *4 (N.Y. Sup. Ct. 2010).  "Under such circumstances, the title insurance policy voids the certificate of title, and all causes of action are restricted to the policy's terms."  *Ilkowitz*, 2018 WL 1595987, at *15 (internal quotation marks and citations omitted).

As to Plaintiff's first theory of liability against the Title Agents — "that the [Title Agents] were negligent in their title search" (Pl. Reply 2) — Plaintiff offers no legal basis to predicate such a claim on the Policy.  As the Court discussed, an action for negligence based on a deficient title search does not lie in an action on the Policy itself.  *See Citibank*, 632 N.Y.S.2d at 781; *Ilkowitz*, 2018 WL 1595987, at *15.  Rather, Plaintiff's only possible means to allege such claim would be premised on a certificate of title, and specifically a certificate that has not merged with the Policy.  *See Fawn Second Ave. LLC* v. *First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 636 (S.D.N.Y. 2022) ("New York law clearly precludes [p]laintiffs from pursuing a claim for negligence under [a title insurance] [p]olicy."); *id.* at 637 (holding that plaintiffs could not sustain a claim for negligence on a certificate of title, because the certificate of title

clearly merged with the policy); *TIMAC Realty* v. *G & E Tremont LLC*, 994

N.Y.S.2d 91, 92 (1st Dep't 2014) (affirming dismissal of contract and negligence

claims against the title agent because plaintiff's claims are "conclusively

refuted by the [certificate of title], which states, '[t]his certificate shall be null

and void … upon the delivery of the policy'" (citations omitted)).

That being said, the Court cannot, on this motion, declare that the claim

is factually or legally impossible, because it cannot determine the extent of

Plaintiff's contractual dealings with the Title Agents.  Defendant correctly notes

that Plaintiff has not alleged that it entered into a separate contractual

relationship with the Title Agents, whereby the Title Agents agreed to guarantee

title to the subject property.  Nor has Plaintiff alleged that a certificate of title

even exists.  (Def. Opp. 16-17).  But nothing in the record definitively rules out

that such certificate of title exists, or that the certificate of title merged with the

Policy.  The AC alleges that the Title Agents "had a contractual duty to the

Plaintiff to conduct an adequate search for defects in title[.]"  (AC ¶ 34).  Yet it

is *silent* as to whether that duty arises from the Policy — which would be

unlikely — or from a certificate of title that did not merge with the Policy.

Though the Court understands Defendant's frustration that "[n]owhere within

Plaintiff's Amended Complaint does it allege that it contracted with the Title

Agent [Defendants] to directly provide it with a title search or an abstract of

title" (Def. Opp. 16), on this motion the Court cannot rule out such possibility,

*see, e.g.*, *Lepore* v. *Blue Ridge Real Est. Co.*, No. 08 Civ. 2028 (NG) (LB), 2008

WL 2986662, at *3 (E.D.N.Y. July 31, 2008) (finding that defendants did not

prove fraudulent joinder because allegations may be "borne out by discovery");
*MBIA Ins. Corp.* v. *Royal Bank of Canada*, 706 F. Supp. 2d 380, 399 (S.D.N.Y.
2009) ("[W]hile [p]laintiffs' two-page [s]ummons with [n]otice may not have
included specific factual allegations that would support an alter ego theory of
breach of contract, [d]efendants have not established, as a legal or factual
matter, the impossibility of [p]laintiffs making out such a claim.  This alone
defeats [d]efendants' removal.").  For this reason alone, there is a possibility,
albeit small, that Plaintiff may maintain a claim against the Title Agents for a
negligent title search, which is sufficient to defeat Defendant's argument in
favor of finding fraudulent joinder.

Plaintiff's second theory — that the Title Agents are liable for failure to
provide notice to Defendant under the Policy — is more complicated.  Here,
Plaintiff's claim appears premised on the Policy.  (*See* AC ¶ 35 (alleging, in
context of breach of contract claim, that the Title Agents failed to timely notify
Defendant of a defect)).  By its own terms, the Policy does not suggest that
notice of a potential claim to the Title Agents constitutes notice of a claim to
Defendant.  (Policy § 3 (noting that "[Plaintiff] shall notify [Defendant] promptly
in writing ... in case of any litigation ... [or] in case [k]nowledge shall come to
[Plaintiff] of any claim or title or interest that is adverse to the [t]itle")).  And the
Court has not discerned an explicit basis under the Policy for the Title Agents'
liability for breach of the Policy; indeed, the Policy principally speaks to rights
and obligations as between Plaintiff and Defendant, not the Title Agents.  (*Id.*

22

§ 14(a) ("This policy … is the entire policy and contract between [Plaintiff] and [Defendant].")).

The issue, however, is that the Court cannot definitively say that Plaintiff's claim is foreclosed by New York law.  Defendant makes much of the fact that the contract appears unambiguous on the issue of notice.  (Def. Opp. 18-19).[8]  And to be clear, Plaintiff does little in the way of defending its claim against Defendant's attack.  (Pl. Reply 4 (noting that "[t]his allegation may or may not ultimately be true, but it is clearly and unquestionably irrelevant to the instant motion")).  But courts in this District assessing motions to remand based on permissive joinder are quite generous with regard to contract claims, given New York's liberal pleading standards.  *See, e.g.*, *M.S.S. Const. Corp.*, 2015 WL 6516861, at *10 (rejecting fraudulent joinder theory for claims against non-diverse insurance agents and brokers despite such agents and brokers being nonparties to contract because "it is not impossible that they may be held liable under [alter ego, manifestation, or assumption of obligations] theories"); *MBIA Ins. Corp.*, 706 F. Supp. 2d at 399 (engaging in similar analysis, and noting that under New York law plaintiffs were "under no obligation" to plead a basis for binding non-party to contract).  It is possible that the Title Agents manifested an intent to be bound by the

---

[8]     Defendant also returns in this part of its brief to arguing that no title claim existed until November 23, 2020, when the trustee commenced the adversary proceeding.  (Def. Opp. 18).  The Court has made it a point to not resolve disputed issues of fact on this motion.  The Court will not resolve whether Defendant was to take action under the Policy upon learning of a potential claim or the actual commencement of the adversary proceeding, as the Court does not find such inquiry relevant to the instant motion.

Policy, or were serving in a capacity as agents of Defendant, when Plaintiff notified the Title Agents of a potential claim in September 2020.

Based on both Plaintiff's (admittedly sparse) allegations against the Title Agents and the record before the Court, it is difficult to ascertain exactly how the parties — including Plaintiff, Defendant, and the Title Agents — viewed their obligations under the Policy.  For example, General Abstract Services LLC appears to be a signatory to at least certain endorsements attached to the Policy (Policy, Waiver of Arbitration Endorsement, and Environmental Protection Lien Endorsement), and acknowledged receipt of Plaintiff's email in September 2020 requesting that it "send [Plaintiff] confirmation that a timely title claim has been filed[.]"  (Leitman Reply Aff., Ex. A).  Though the Court has reviewed the Policy, it cannot definitively say at this juncture that the Title Agents did not assume certain contractual obligations, or that the parties operated in such a manner that the provisions to which Defendant points regarding notice were not modified or waived.  *See, e.g.*, *Bricklayers Ins. & Welfare Fund* v. *Minhas Gen. Contractors Co., LLC*, No. 13 Civ. 4783 (FB) (JO), 2015 WL 6830077, at *2 (E.D.N.Y. Nov. 6, 2015) (collecting cases expounding the rule that parties may modify or eliminate contract provisions through a course of conduct).

Simply put, the Court understands Defendant's position, but cannot, under the proper legal standard, say that there are "no grounds … for Plaintiff to contend that the Title Agents possessed a reporting obligation or are liable for having failed to report claims."  (Def. Opp. 18).  The Court cannot apply the

motion to dismiss standard at this stage; instead, it must determine whether Plaintiff's claim, no matter how barebones, is legally or factually impossible. *MBIA Ins. Corp.*, 706 F. Supp. 2d at 399 ("However tenuously [d]efendants think these allegations support a breach of contract claim against a non-signatory, the Court cannot say that it is legally or factually impossible that [p]laintiffs can succeed on the merits of a contract claim under these theories."). On the record before the Court, Defendant has not shown that no possibility exists that a New York court would allow Plaintiff's claim to proceed.

### c.   Balancing the Factors

Although the timing of Plaintiff's amendment is suspect, every other factor of the fairness inquiry weighs in favor of Plaintiff, and Defendant has not proven that Plaintiff has no possibility of stating a claim against the Title Agents. Because the record does not suggest that Plaintiff filed the Amended Complaint "solely … to defeat diversity jurisdiction[,]" *Wyant* v. *Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 923 (S.D.N.Y. 1995), on balance the fairness factors weigh in favor of permitting joinder and remanding this case.

### CONCLUSION

For the reasons stated in this Opinion, the Court GRANTS Plaintiff's motion to remand this case. (Dkt. #8). The Clerk of Court is directed to REMAND this case to the New York State Supreme Court, New York County.

SO ORDERED.

Dated:     April 7, 2023
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

25